IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| MAHAN HOSSEINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No:_____ |
| | ) | |
| | ) | |
| UPSTART NETWORK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Mahan Hosseini ("Plaintiff"), by and through counsel, brings this Complaint against Defendant Upstart Network, Inc. ("Defendant" "Upstart") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. Mr. Hosseini suffered financial setbacks that necessitated his filing for bankruptcy and seeking a fresh start thereafter. Pursuant to the FCRA, furnishers of credit data are required to timely and accurately report to the credit reporting agencies ("CRAs") that a consumer has been discharged in bankruptcy. In this instance, a high interest lending entity known as Upstart failed to accurately report the status of Mr. Hosseini's account to all three of the major CRAs. What made the violation even more problematic was that Upstart knew that his debt had been discharged, received both the notice of filing and discharge in bankruptcy and provided different reports to different CRAs. Ultimately, Upstart corrected the trade line data with TransUnion and Equifax, but failed to correct it with Experian. To make it worse still, when Mr. Hosseini contacted Upstart directly to try and resolve the issue, Upstart acknowledged that the account was not reporting correctly and promised to send notice to the CRAs to correct the credit reporting, but those efforts

failed because Upstart sent inaccurate and conflicting data. The dispute processor for Upstart that handled the direct disputes through Experian knew that his debt had been discharged, but she repeatedly failed to report the account correctly and allowed it to continue to report as an active charge-off with a balance. Upstart had multiple opportunities to report correctly the trade line with Experian and recklessly failed to do so. This failure was exceptionally egregious in that Upstart knew how to correct it, was notified by the CRAs how to correct the inaccurate credit reporting, had corrected it previously with Equifax and TransUnion, yet repeatedly failed to report accurate data to Experian. Instead of the fresh start that Mr. Hosseini had been entitled after his bankruptcy, Upstart continued to falsely report that the debt was past due, charged-off and not discharged in bankruptcy. As a result, Mr. Hosseini suffered significant and extensive damages as set forth herein. Accordingly, Plaintiff Mahan Hosseini brings this case against Upstart for its violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* based upon its failure to investigate properly and correct the disputed Upstart account on his credit report. Mr. Hosseini requests actual damages, punitive damages, statutory damages, attorneys' fees, and costs based upon Upstart's actions.

**Parties**

2. Plaintiff Mahan Hosseini is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Mahan Hosseini.

3. Upstart Network, Inc. is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer

transactions or experiences with any consumer. Upstart regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction because Upstart conducted negligent and reckless investigations of Mr. Hosseini's account that caused him damage in Virginia. Based upon information and belief, Upstart conducts business operations in Virginia by offering loans over the internet to Virginia residents. In addition, this forum is also the most convenient for the adjudication of his claims.

## Factual Allegations

5. Mr. Hosseini filed bankruptcy on July 1, 2016, and he included as part of the filing the account at issue in this lawsuit with Upstart Network, Inc. The bankruptcy court discharged Mr. Hosseini on October 13, 2016, and it mailed notice of the discharge to Mr. Hosseini's creditors on October 15, 2016.

6. At all times relevant to this lawsuit, Upstart Network knew that Mr. Hosseini filed bankruptcy and that the debt related to the Upstart account had been discharged in the bankruptcy. Upstart received and had in its possession both the notice of filing and discharge in bankruptcy.

7. In April and March 2017, Mr. Hosseini reviewed his credit files, and he noticed that the credit reporting agencies were not reporting that his debts had been discharged in bankruptcy. As for the facts related to this case, the credit reporting agencies

continued to report a significant past due balance and charge off for an Upstart Network account.

8. On May 18, 2017, Andris Zingitis on behalf of Upstart responded to an ACDV issued by Equifax. The ACDV response noted that the debt had been discharged in bankruptcy and contained the proper consumer information indicator "E" to notify Equifax that the account was discharged through a Chapter 7 bankruptcy.

9. Similarly, on July 18, 2017, David Liu, on behalf of Upstart, responded to a TransUnion ACDV by stating that the debt was discharged in bankruptcy and reporting the consumer information indicator code 'E" as part of the account. Mr. Hosseini had made some progress toward having his credit file report accurate information.

10. Unfortunately for Mr. Hosseini, Experian continued to report the Upstart Network account in the amount of $19,613 dollars currently past due despite the fact that the other credit reporting agencies had corrected the account to show that the Upstart account had been discharged through bankruptcy. Accordingly, Mr. Hosseini disputed Experian's reporting of the Upstart account in July 2018.

11. On July 11, 2018, Experian issued an ACDV that placed Upstart on direct notice of the issue because Experian placed the proper consumer information indicator code "E" meaning bankruptcy in the "Consumer Claims" section of the ACDV. Upstart, through its agent and employee Lizzet Garcia ignored the "E" Consumer Information Indicator Code investigation request and instead blank filled that section of the ACDV on the August 3, 2018 ACDV response. Because of these actions, Experian would verify that the past due balance and charge-off was still owed and continue to report an open account on Mr. Hosseini's credit report, even though the debt had been discharged in bankruptcy.

12. Upstart's actions with regards to its response to the July 11, 2018 Experian ACDV demonstrates that it has a reckless procedure for investigating ACDVs that it receives from the credit reporting agencies. Upstart knew that the account had been discharged in bankruptcy, and it knew that Experian specifically informed them of what Mr. Hosseini claimed was the problem with the credit reporting by Upstart not reporting the account as discharged in bankruptcy to Experian. More importantly, Experian told Upstart how to fix it: place an E in the Consumer Information Indicator Code field.

13. On July 18, 2018, Mr. Hosseini received a credit denial letter from Freedom Plus loan program. Based upon information and belief, Mr. Hosseini was unable to obtain a loan because the Upstart account continued to report a current significant past due charge-off.

14. Because Experian still reported an over $19,000 active charge-off for the Upstart account that the bankruptcy discharged, Mr. Hosseini contacted Upstart directly to see if he could solve his problem.

15. On August 14, 2018, Upstart Network, through its authorized agent and employee Amadeo in the servicing department sent an email to Mr. Hosseini that stated in part, "We sincerely apologize for the delay in our response as we carefully complete the proper adjustments to your credit file. The adjustment to your credit file is updated to show the proper Bankruptcy Code: Discharged. We understand that you would prefer not to be contacted by Upstart, however, I felt it necessary to reach out to you with this update. I apologize for the inconvenience this may have caused you." Mr. Hosseini hoped that this would be the end of his problems.

16. On August 14, 2018, Upstart Network, Inc. issued an AUD (Automated Universal Data form) in an effort to correct the inaccurate credit reporting. By issuing the AUD, Upstart acknowledged that it knew Mr. Hosseini had included the account in bankruptcy. Moreover, every AUD contains an affirmation at the bottom that states, "By submitting the AUD, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted."

17. Records obtained from TransUnion at a later date indicated that the credit reporting agencies had trouble processing the AUD issued by Upstart Network because the AUD that TransuUnion produced stated at the bottom, "**ERROR**UNABLE TO DETERMINE ACCOUNT RATING-METRO2 COMBINATION INVALID."

18. Despite the email and the AUD certification, Upstart would conduct a reckless investigation when it received another ACDV from Experian on August 24, 2018. On September 3, 2018, Lizzet Garcia responded to the ACDV on behalf of Upstart by once again failing to include the proper consumer information indicator, "E" as part of her response to the ACDV. The effect of her action would be that the Upstart account would continue to report on Mr. Hosseini's consumer credit report as an active charge-off account with a $19,613 past due balance that had not been discharged in bankruptcy.

19. Based upon Upstart's response on the September 3, 2018 ACDV, Upstart reported inaccurate credit information to Experian.

20. Lizzet Garcia's actions are reckless and not merely negligent because she could have seen from Upstart's records that the account had been included in bankruptcy; Upstart received notice of the discharge of the debt; Upstart sent an apology email

regarding this very issue, and that Upstart had issued an AUD about this issue. Only a reckless culture for ACDV dispute investigation or one in which no meaningful training efforts were implemented, would have allowed such a disastrous ACDV response that caused the Upstart account to continue to wreak havoc on Mr. Hosseini's credit file and deny him a post-bankruptcy fresh start.

21. Mr. Hosseini wanted to begin the process of shopping for a home to purchase for his family. On October 26, 2018, Quicken Loans obtained a copy of Mr. Hosseini's credit report, and Upstart Network reported a $19,613 past due debt on the account even though the debt should have reported as discharged in bankruptcy. Based upon information and belief, the significant past due balance reporting by Upstart was a substantial factor in Mr. Hosseini's inability to obtain credit from Quicken Loans.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681 s-2(b)

22. Plaintiff incorporates paragraphs one (1) through twenty-one (21) as if fully stated herein.

23. Upstart both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b) by failing to conduct reasonable investigations with respect to the disputes that it received as part of the ACDVs that have been previously identified in the facts.

24. As described in the factual averments, Upstart received multiple ACDVs from Experian in accordance with Experian's duties to notify Upstart of Mr. Hosseini's credit reporting disputes. Upstart ignored the information provided in the ACDV forms that the correct consumer information indicator should have reported "E," ignored the

information available in its own records that Upstart attempted to issue an AUD regarding this very issue, and ignored the factual circumstances that its own records showed actual knowledge of the bankruptcy discharge. The initial ACDV responses to TransUnion and Equifax also acknowledged that Upstart was well aware of the fact that the account had been discharged in bankruptcy. Upstart's dispute processor, Lizzet Garcia never could verify the information reported on the ACDVs and as such should have reported the proper consumer information indicator code on the two Experian ACDVs.

25. Punitive damages are warranted pursuant to the facts of this matter because Upstart has ignored the clear instruction and long standing precedent that a reasonable furnisher investigation under the FCRA requires a systemic inquiry and not just a cursory examination of computer records as occurred in all of the "investigations" in this case. *See Johnson v. MBNA, Inc.* 357 F.3d 426, 430-431 (4th Cir. 2004) *stating* "Thus, the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors. Further, § 1681s-2(b)(1)(A) uses the term 'investigation' in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute - and, ultimately, correct - inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *unreasonable* inquiries by creditors." Given the facts of this matter, Upstart disregarded even a cursory review of its own records let alone the detailed systematic approach required for proper FCRA investigations. In all likelihood, Upstart implements this policy to keep the cost of credit dispute investigations low with no regard to the great harm that it causes consumers. Discovery is necessary as to the size and scope of the FCRA investigation department at Upstart.

26. Punitive damages are also warranted because Upstart refused to process the disputes by reviewing what had transpired previously in disputes including the accurate response to TransUnion and Equifax. As the Fourth Circuit noted processing each dispute request independently without consulting prior correspondence supports a punitive damages award. *See Daugherty v. Ocwen Loan Servicing, LLC*, 2017 U.S. App. LEXIS 13521, *20-21 (4th Cir. 2017), *stating*, " A jury also could conclude from the evidence that Ocwen was reckless in processing each dispute verification request independently, without consulting the context of prior correspondence from Daugherty, the CFPB, or Equifax regarding the same account."

27. Mr. Hosseini is entitled to actual damages, statutory damages, and punitive damages based upon the violations of the Fair Credit Reporting Act. Mr. Hosseini suffered damages in the form of the loss of time working to correct the reporting of the inaccurate accounts, loss of access to credit, frustration and aggravation of dealing with problems related to the Upstart account as well as all attorney's fees and costs.

### **Prayer for Relief**

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against Defendant;

b) punitive damages based upon Defendant's repeated and reckless violations of the FCRA;

c) statutory damages against Defendant based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

e)  all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues against the defendant.

                                                Respectfully submitted
                                                Mahan Hosseini

                                                By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Drive, Suite 103
Reston, Virginia 20191
(571) 313-0412
(571) 313-0582