# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

MAHAN HOSSEINI, )
    Plaintiff, )
)
v. )
) Civil Case No. 19-cv-704
UPSTART NETWORK, INC., )
    Defendant. )

## MEMORANDUM OPINION

The threshold issue in this Fair Credit Reporting Act Case ("FCRA") is whether Defendant Upstart Network, Inc.'s motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 & 4, should be granted. Defendant was the loan servicer for an $18,000 loan from Cross River Bank that Plaintiff Mahan Hosseini obtained in July 2014. Plaintiff, who succeeded in having the loan discharged in bankruptcy in 2016, has sued defendant for violating FCRA by failing to report the discharge. Defendant asserts that, in the course of applying for the loan, plaintiff agreed to an arbitration clause and later reaffirmed that agreement in the Promissory Note that he signed. For his part, plaintiff claims that he did not read the Upstart Borrower Platform Agreement (the "Platform Agreement") and does not recall even looking at it. For the reasons that follow, the record reflects that plaintiff accepted the arbitration clause in the Platform Agreement and hence the motion to compel arbitration must be granted.

## I.

The following facts are appropriately derived from the parties' affidavits, declarations, and exhibits as well as the facts alleged in the Complaint.

- In 2014, plaintiff, seeking to obtain a loan, wen to defendant's website, the Upstart Platform, which is an online platform or web-based marketplace that connects individual borrowers who wish to obtain loans to institutions who wish to fund them.

- On July 10, 2014, evidence presented by defendant establishes that plaintiff provided his name, contact information, personal identifiers and other information to create an Upstart account.

- During this process, defendant's website assigned plaintiff a unique Upstart Applicant ID that ended with the numbers ***759 and a unique Borrower ID that ended with the numbers **831.

- To proceed on the website and submit a loan application, plaintiff had to accept various user agreements and documents, including the Platform Agreement. *See* Exh. A. (a copy of the June 17, 2014 version of the Platform Agreement).

- The Platform Agreement provides that a plaintiff agreed "that any Claim (defined below) will be, at either your or our election, submitted to and resolved on an individual basis by binding arbitration." Exh. A, at ¶ 14(b)(i).

- The Platform Agreement defines a "Claim" as "any claim, dispute, or controversy relating to (1) this Agreement . . . or any other agreement related to this Agreement or to any [of] our services; (2) any relationship resulting from, or activities connected to this Agreement; (3) any loan-related marketing, processing, servicing, or collection activities performed by us; or (4) breach of this agreement or any other such agreement . . ." Exh. A, at ¶ 14(b)(i).

- The Platform Agreement also provides that plaintiff could reject the arbitration provision, if he mailed a signed rejection letter within 30 calendar days of the date of his acceptance of the Platform Agreement. *See* Exh. A, at ¶ 14(b)(ii).

- To accept those agreements, including the Platform Agreement, plaintiff was presented with a dialogue box[1] that provided a box for him to check as well as buttons requiring plaintiff to "Agree" or "Decline Loan."

- The dialogue box stated: "By clicking agree, I confirm I have read, understood, and agree to the terms and conditions of the Promissory Note, the Upstart Platform Agreement, Credit Score Disclosure, and the Cross River Bank Privacy Disclosure."

- Below the dialogue box was a warning in all capital letters: "CAUTION: IT IS IMPORTANT THAT YOU READ THROUGH THE PROMISSORY NOTE BEFORE YOU CLICK 'AGREE' BELOW.'"

---

[1] A dialogue box is a small window that appears that communicates information to a user and prompts them for a response.

- Below all of the text, two buttons appeared: a green "Agree" button and a white "Decline Loan" button.

- Plaintiff could review each of the documents listed in the dialogue box via a hyperlink to the document.

- Plaintiff claims that he never reviews the details that appear in dialogue boxes online or clicks on hyperlinks that may be part of such dialogue boxes to see what they contain. He also claims that he has no recollection of seeing or agreeing to the Platform Agreement.

- Plaintiff's user account activity and history shows that plaintiff checked the box and clicked the "Agree" button and thereby accepting the Platform Agreement, including the arbitration clause, on July 10, 2014 at 11:19 a.m. PST.

- If plaintiff had not accepted the agreements included in the dialogue box by checking the provided box and clicking "Agree," then he would not have been able to complete his loan application or use the Upstart Platform.

- By clicking "Agree," plaintiff agreed to the June 17, 2014 version of the Platform Agreement and that document would have appeared when he clicked on the "Upstart Platform Agreement" hyperlink that appeared in the dialogue box. *See* Exh. A. Similarly, plaintiff would have been taken to the June 6, 2014 version of the Promissory Note if he had clicked on the "Promissory Note" hyperlink. *See* Exh. B (a copy of the June 6, 2014 Promissory Note).

- The Promissory Note provides that: "The Upstart Application, the Upstart Borrower Platform Agreement, loan disclosures, and the Upstart website's (www.upstart.com) Terms of Service are incorporated into this Note by reference." Exh. B, at ¶ 16.

- Once plaintiff's loan application was approved, plaintiff's user account activity and history shows that plaintiff digitally signed the Promissory Note on July 29, 2014 at 4:02:26 GMT.

- The Promissory Note is electronically signed with plaintiff's assigned Borrower ID. *See* Exh. B.

- Pursuant to the Promissory Note, plaintiff obtained a $18,000 personal loan from Cross River Bank (the "Loan").

- Plaintiff would not have been able to obtain the loan if he did not agree to the Platform Agreement and the Promissory Note.

- On July 1, 2016, plaintiff filed for bankruptcy.

- As part of the bankruptcy proceeding, the Loan that plaintiff obtained was discharged in October 2016.

3

- On May 31, 2019, plaintiff filed his Complaint alleging that defendant failed to report to credit reporting agencies that the Loan was discharged in bankruptcy proceedings.

- After defendant filed the motion to compel arbitration, plaintiff visited the 2019 version of defendant's website because plaintiff contends that he did not recall the Platform Agreement,

- After plaintiff supplied his personal information on the 2019 Upstart Platform, a dialogue box appeared that asked him to check a box and then click an "agree and see your rate" button.

- The dialogue box provided that, by checking the box, plaintiff was agreeing to an Electronic Communications Policy and Consent, the Upstart Terms and Conditions, and the Upstart Privacy Policy. Each of the referenced documents in the dialogue box also contained a hyperlink.

- Plaintiff clicked on the Upstart Terms and Conditions hyperlink which took him to the 2019 version of the Upstart Platform Agreement, which is different from Exhibit A. Plaintiff could not locate a document titled "Upstart Terms and Conditions" referenced in the 2019 version of the dialogue box and could not find a button that permitted him to "Agree" to the 2019 version of the Upstart Platform Agreement.

- Because plaintiff did not recall ever agreeing to the Platform Agreement, he decided, out of an abundance of caution, to send a letter to defendant opting out of the arbitration clause pursuant to paragraph 14(b)(ii) of the Platform Agreement in July 2019.

- Before plaintiff sent this 2019 letter, defendant had not received any documentation indicating that plaintiff wished to opt out of the arbitration clause.

## II.

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Specifically, Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Accordingly, the Fourth Circuit has observed that "[w]hen parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms." *Murray v. UFCW Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002).

In determining whether the FAA requires a court to compel arbitration and stay ongoing judicial proceedings, a court must conduct a three-step inquiry. *See Green Tree*, 531 U.S. at 90. To begin with, it is necessary to "ask whether the parties agreed to submit their claims to arbitration." *Id*. If so, it is then necessary to determine "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id*. (internal citations omitted). Assuming Congress has not evinced such an intention, a court must compel arbitration and stay judicial proceedings, provided that it determines that "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Id*. (internal citations and quotations omitted). Here, the parties only dispute whether there is an agreement to arbitrate.[2] Accordingly, defendant bears the burden of establishing by a preponderance of the evidence the existence of a binding agreement to arbitrate. *See Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017); *Bigger v. Facebook, Inc.*, 2020 WL 401804, at *4 (7th Cir. 2020). If defendant makes such a showing, plaintiff "must come forward with sufficient facts to place the entitlement to arbitration in dispute." *Lovelady v. Five Star Quality Care-Va, LLC*, No.4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018).

**A.**

Defendant asserts that the Platform Agreement was presented to plaintiff as part of a "clickwrap" agreement and that, as such, the Platform Agreement, including the arbitration

---

[2] Plaintiff focuses his argument solely on whether there was a mutual assent to the Platform Agreement. The other two *Green Tree* elements, however, are clearly satisfied as many courts have held that FRCA claims are arbitrable, *see, e.g., Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 348 (D. Md. 2015) ("For that matter, other courts have recognized that claims under the FCRA . . . may properly be subject to arbitration."), and the arbitration clause in the Platform Agreement covers any "claim, dispute or controversy relating to" defendant's services or collection activities, Platform Agreement ¶ 14(b).

5

clause, is enforceable. A clickwrap agreement is a dialogue box that appears on a webpage and requires that a user agree to certain terms before allowing the user to continue to use the website.[3] Most courts have concluded that clickwrap agreements are valid, enforceable contracts.[4] Modified or hybrid clickwrap agreements, where the user must affirmatively manifest assent to agreements that are provided via hyperlink, are also routinely found to be valid, enforceable contracts.[5] Here, the Platform Agreement is a hybrid clickwrap agreement to which plaintiff manifested his assent. Accordingly, the Platform Agreement, including the arbitration clause, is enforceable and defendant's motion to compel arbitration must be granted.

Defendant has submitted three declarations and several exhibits which defendant argues establish that plaintiff affirmatively agreed to the Platform Agreement and the arbitration clause

---

[3] *See, e.g., Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n. 4 (2d Cir. 2002). A clickwrap agreement "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon. The product cannot be obtained or used unless and until the icon is clicked." *Specht*, 306 F.3d at 22 n.4.

[4] *See, e.g., A.V. v. iParadigms, Ltd. Liability Co.*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008) ("In fact, many courts have found clickwrap agreements to be enforceable); *Hancock v. AT&T Co., Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'"); *Kraft Real Estate Inv., LLC v. Homeaway.com, Inc.*, No. 4:08-cv-3788, 2012 WL 220271, at *7 (D.S.C. Jan. 24, 2012) (collecting cases on propriety of clickwrap agreements).

[5] *See, e.g., Wilson v. Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1314 (W.D. Wash. 2018) ("[E]ven if a website or app contains just a hyperlink to the terms, courts have been more than willing to find a valid agreement if the user is still forced somehow to manifest their assent to the terms, as opposed to passively browsing the site.") (collecting cases); *Selden v. Airbnb, Inc.*, No. 16 CV 933, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016), appeal dismissed, 681 F.App'x 1 (D.C. Cir. 2017), cert. denied, 138 S.Ct. 222 (2017) (finding hybrid clickwrap agreement valid); *Plazza v. Airbnb, Inc.*, 289 F.Supp.3d 537, 552 (S.D.N.Y. 2018) (finding hybrid clickwrap agreement valid); *Fjeta v. Facebook, Inc.*, 841 F.Supp.2d 829, 840 (S.D.N.Y.2012) (finding that the plaintiff had notice of the "Terms of Use" because he "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences")

contained within it. Anna Counselman, the Head of Operations and co-founder of defendant, averred in her affidavit that, at the time plaintiff applied for a loan in July 2014, the Upstart Platform "required him to accept" the Platform Agreement and other agreements "by affirmatively checking an 'I Agree' box or clicking an 'I Agree' button on the form." Counselman Aff. ¶ 9. Counselman also stated that "the prospective borrower cannot complete the loan application or use the *Upstart Platform*" without agreeing to the terms of the Platform Agreement and other agreements. *Id.* ¶ 10. Counselman reviewed defendant's records and determined that plaintiff created his account and agreed to the Platform Agreement at 11:19 a.m. PST on July 10, 2014. *Id.* ¶ 11. The information included in Counselman's affidavit is echoed by the declaration of defendant's Head of Information Technology, Saikat Maiti. *See* Maiti Decl. ¶¶ 6-11. In a second declaration, Maiti provides a screenshot of the page depicting the "I Agree" box that appeared in July 2014 (through 2015) when a user applied for a loan and had to agree to the terms of the Platform Agreement. Maiti Second Decl. ¶¶ 6-7, Exh. 1. The specific text of the "I Agree" box states: "By clicking agree, I confirm I have read, understood, and agree to the terms and conditions of the Promissory Note, the Upstart Platform Agreement, Credit Score Disclosure, and the Cross River Bank Privacy Disclosure." *Id.* ¶ 8. Furthermore, Maiti states that the "I Agree" box provided a link to the Platform Agreement. *Id.* ¶ 11.

Defendant's evidence establishes that the Platform Agreement is a valid hybrid clickwrap agreement, which required that plaintiff affirmatively consent to the terms of hyperlinked agreements, including the Platform Agreement's arbitration clause, before proceeding to use the Upstart Platform. Maiti's second declaration establishes that plaintiff was presented with the "I Agree" box informing him that "[b]y clicking agree, I confirm I have read, understood, and agree to the terms and conditions of . . . the Upstart Platform Agreement . . ." Maiti Second Decl. ¶ 8.

7

Clicking "I Agree" is a valid means of expressing assent to a contract. *See Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, at *6 (N.D. Cal. June 21, 2016). Moreover, courts have found almost identical hybrid clickwrap agreements to be enforceable. In *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829 (S.D.N.Y. 2012), the court found that a contract was formed where the plaintiff "was informed of the consequences of his assenting click" and the plaintiff there, as here, was shown immediately below the hyperlinks to the documents to click to understand those consequences. *Id.* at 840. In *Fteja*, the court noted that a hybrid clickwrap agreement was no different from a cruise ticket or sign where a user would be required to turn the document over to learn of all of the terms of the contract. *See id.* at 839. Other courts have similarly found valid contracts formed where a user clicks "I Agree" and is provided with the hyperlinked terms of the contract.[6] Because plaintiff clicked "I Agree" in order to use the Upstart Platform, including the arbitration clause, and obtain a loan, he has affirmatively agreed to the Platform Agreement and hence there is a valid agreement to arbitrate.

Plaintiff seeks to undercut this showing of his assent by claiming that he did not intend to enter into an arbitration agreement with defendant and by pointing to the current version of defendant's website. These arguments are meritless. Plaintiff denies his agreement to arbitrate,

---

[6] *See, e.g., Rodriguez v. Experian Serv. Corp.*, No. 15-3553, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration clause contained within terms of use where "[w]ebsite contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment which stated 'By clicking the button above . . . you agree to our Terms of Use'" which were hyperlinked); *Crawford v. Beachbody, LLC*, No. 14cv1583, 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause contained in terms and conditions of website where, at the final page of placing an order, user was required to click "Place Order" and language on the same page stated that "by clicking Place Order below, you are agreement" to the website's terms and conditions, which were hyperlinked); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them") *Plazza v. Airbnb, Inc.*, 289 F.Supp.3d 537, 552 (S.D.N.Y. 2018) (same).

but that assertion is meaningless and unpersuasive given that plaintiff admits that, when presented with electronic agreements like the modified clickwrap agreement here, he "never review[s] the details in such boxes or click on the hyperlinks." Hosseini Decl. ¶ 9. Courts uniformly hold that "failure to read an enforceable contract, as with any binding contract, will not excuse compliance with its terms." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).[7] Plaintiff further complains that the current version of the website, which states "Agree and See Your Rate," does not adequately convey that a user is agreeing to the Platform Agreement. Hosseini Decl. ¶ 13. The current version of defendant's website is not relevant to the issues presented in this case, namely whether plaintiff agreed to the Platform Agreement in July 2014.

Plaintiff also argues that the record lacks sufficient indicia of authenticity and credibility of the Platform Agreement. This argument also fails. Plaintiff argues that the evidence of agreement is unenforceable because he did not physically sign the agreement.[8] As courts have sensibly recognized, "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011). Thus, manifesting agreement by

---

[7] *See also One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) ("Under ordinary contract principles, Tubal-Cain is therefore bound by those terms and conditions, even if neither Van Huis nor anyone else at Tubal-Cain ever visited Crowley's website in order to familiarize himself with those terms and conditions."); *Centrifugal Force, Inc. v. Softnet Commc'n Inc.*, No. 08 Civ. 5463, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011) ("Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract.").

[8] Plaintiff also questions the reliability of the Platform Agreement because of disputes that arose prior to this litigation regarding responses to a subpoena. Whether defendant responded adequately to plaintiff's subpoena is not a matter that is before this Court nor does it have any bearing on the outcome of this motion. This argument is not persuasive and does not pertain the reliability of the affidavits submitted by Counselman or Maiti.

clicking "I agree," as the caselaw discussed *supra* holds, is sufficient. Moreover, the FAA does not require arbitration agreements to be signed. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature."). Thus, clicking an "Agree" button is sufficient to manifest plaintiff's agreement without the inclusion of an electronic signature or other identifying information from plaintiff on the agreement.[9] Furthermore, district courts have recognized that "[a] contract is no less a contract simply because it is entered into via a computer." *A.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008). Here, the record establishes that plaintiff manifested his assent to the Platform Agreement by clicking "I Agree" and thereby entered into a valid contract containing an arbitration clause.

Moreover, courts have rejected similar arguments regarding lack of credible evidence of agreement. Indeed, this case is similar to *Schwartz v. Comcast Corp.*, 256 F. App'x 515 (3d Cir. 2007). In *Schwartz*, a subscription agreement, like the Platform Agreement, contained an arbitration clause and plaintiff denied the existence of an agreement. The Third Circuit was unimpressed and, relying on the defendant's evidence "of its consistent practice regarding delivery of subscription agreements and of the conduct of the parties," found that there was *prima facie* evidence of an agreement and that plaintiff offered no evidence to the contrary. *Id.* at 518. Thus, the Third Circuit held that there was a valid subscription agreement that contained an arbitration clause. Other courts have likewise rejected attempts to dispute agreement.[10] In

---

[9] Here, such a physical manifestation of plaintiff's signature seems even more unnecessary where defendant keeps a record of the date and time when plaintiff clicked the "Agree" button and agreed to the Platform Agreement.

[10] The case cited by plaintiff, *Dillon v. BMO Harris Bank, NA*, 173 F.Supp.3d 258 (M.D.N.C. 2016) is plainly inapposite. In *Dillon*, the district court held that the defendant did not meet its

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756 (N.D. Tex. 2006), the district court found that, as is the case here, there was unchallenged evidence that, "[w]ithout accepting the terms of the license, installation is not possible." *Id.* Similarly, in *Burcham v. Expedia, Inc.*, No.07-cv-1963, 2009 WL 586513 (D. Mo. Mar. 6, 2009), the district court rejected the plaintiff's "clever theory for how he might have subverted the online agreement," and held that this theory was not persuasive, because "[t]he website requires assent to the terms" and there was "no evidence that suggests the website operates any differently." *Id.* at *3. Here, the evidence of agreement is even stronger than that presented in other cases. Defendant has provided undisputed testimony indicating not only that it was impossible to proceed to obtain a loan without agreeing to the Platform Agreement, but the exact time when such agreement took place.

Plaintiff's other authenticity arguments are similarly meritless. Plaintiff suggests that defendant has made alterations to the Platform Agreement demonstrating that it was not in force in 2014, when plaintiff used defendant's website. Namely, plaintiff points to: (i) an address; (ii) a copyright from 2012-2019; and (iii) a reference to Exhibit A. None of the points raised by plaintiff demonstrate that the Platform Agreement attached as an exhibit was not in effect in 2014. To begin with, Counselman, who founded defendant and was involved with defendant in 2014, avers that the Platform Agreement was the agreement used in 2014. *See* Counselman Aff. ¶¶ 11-12. Similarly, Maiti, the head of information technology at defendant, attests that the Platform Agreement was in place in 2014. *See* Maiti Decl. ¶ 11. Furthermore, as defendant sensibly explains, the reference to the San Carlos, California address and the 2012-2019

---

initial burden to establish the existence of an agreement because of a history of submitting "false declarations to other courts" and where the affiant was not employed by the company seeking to enforce the arbitration clause. 173 F. Supp. 3d at 265. Those circumstances are not present here.

11

copyright were affixed upon retrieval of the document from online storage for use in this litigation. *See* Reply at 11. The reference to Exhibit A at the end of the Platform Agreement is explained within the agreement itself: "The loan will be evidenced by a promissory note you make to CRB substantially in the form provided in <u>Exhibit A</u> to this Agreement below." Exh. A, ¶ 4. Thus, plaintiff's suggestions of fraud are unsupported and unpersuasive. Moreover, authenticity is not a high barrier to overcome. *See* Rule 901(a) (a proponent of evidence must produce sufficient evidence that "the item is what it purports to be"). Here, there are multiple declarations attesting to the authenticity of the Platform Agreement attached as Exhibit A. *See Melo v. Zumper, Inc.*, No. 3:19-cv-621, 2020 WL 465033, at *7 (E.D. Va. Jan. 28, 2020). Plaintiff offers no evidence to show that the Platform Agreement attached as Exhibit A was *not* in the one in place in 2014 and was *not* agreed to by plaintiff.[11]

In sum, defendant has come forward with evidence establishing the existence of an agreement to arbitrate that plaintiff has failed to rebut. *See Green v. Kline Chevrolet Sales Corp.*, No., 2019 WL 3728266, at *3 (E.D.Va. Aug. 7, 2019) (citing *Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). The parties agreed to the Platform Agreement in July 2014, and the disputes raised in the Complaint fall within the arbitration clause. Accordingly, plaintiff is bound by the arbitration clause and the motion to compel arbitration must be granted.

---

[11] Plaintiff asserts that he now rejects the Platform Agreement. *See* Hosseini Decl. ¶ 17. The Platform Agreement provides that plaintiff had the right to reject the agreement within 30 days. *See* Exh. A, ¶ 14. Plaintiff's rejection, in 2019, comes far too late after his July 2014 agreement to the Platform Agreement. As addressed *supra*, plaintiff's statement that he did not read the Platform Agreement does not release plaintiff from the terms of that agreement and does not extend the thirty-day deadline for rescission of his agreement. This argument is meritless and unpersuasive.

B.

Even assuming, *arguendo*, that plaintiff did not agree to the Platform Agreement itself, which would be impossible given the design of defendant's website, plaintiff does not dispute that he agreed to the Promissory Note in order to obtain the Loan. The Promissory Note, Exhibit B to the motion, incorporates the Platform Agreement, including the arbitration clause, as part of the Promissory Note. *See* Exh. B, ¶ 16. Plaintiff does not deny that he signed the Promissory Note or that it contains this provision,[12] but argues that, because the Promissory Note is between plaintiff and a third-party, the incorporation clause in paragraph 16 does not bind plaintiff to arbitrate with defendant pursuant to the Platform Agreement. Plaintiff is incorrect.

Plaintiff cites no case for the proposition that incorporating the Platform Agreement into the Promissory Note does not require plaintiff to arbitrate with defendant. Courts have held that that non-parties to a contract may compel or be compelled to arbitrate in similar circumstances.[13]

---

[12] Plaintiff argues that defendant cannot authenticate the Promissory Note, because the note is an agreement between plaintiff and a third party. To begin with, plaintiff does not deny that he signed the Promissory Note and, indeed, the note is electronically signed by plaintiff. Moreover, plaintiff's motion refers to Exhibit B as "a copy of the note with Cross River Bank," indicating that plaintiff does not materially dispute its authenticity. Opp'n at 7. Additionally, Counselman's affidavit and Maiti's declaration both aver that Exhibit B is a true copy of the Promissory Note executed by plaintiff. *See* Counselman Aff. ¶ 12; Maiti Decl. ¶¶ 15-16. Moreover, Counselman averred that the Note is maintained as part of the ordinary course of defendant's business. *See* Counselman Aff. ¶ 3. As defendant correctly notes, the question of authenticity is not a high barrier and courts recognize that "[i]t is not essential that the offering witness be the recorder or even be certain of who recorded the item." *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2011); *see also Milbourne v. JRK Residential Am.*, 2016 WL 10170818, at *3 (E.D.Va. Mar. 15, 2016); *Melo v. Zumper, Inc.*, No. 3:19-cv-621, 2020 WL 465033, at *7 (E.D. Va. Jan. 28, 2020). Thus, defendant's evidence clearly establishes the authenticity of the Promissory Note, because defendant has produced evidence sufficient to support a finding that the Promissory Note is what it purports to be. *See* Rule 901(a), Fed. R. Evid.

[13] *See Long v. Silver*, 248 F.3d 309, 320 (4th Cir.2001) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); *Employers Ins. of Wausau v. Bright Metal Specialties*, 251 F.3d 1316, 1323 (11th Cir. 2001) (holding that a non-signatory to a prior agreement was bound by an arbitration clause contained in the prior

Courts have also recognized that the reach of the arbitration clause is not limited when it is incorporated into another contract.[14] Here, the Promissory Note explicitly incorporated the Platform Agreement, which includes plaintiff's agreement to arbitrate disputes with defendant, as part of the "Entire Agreement" into which plaintiff entered. Exh. B, ¶ 16. Because the Platform Agreement is incorporated into the Promissory Note and because the Platform Agreement was intended to permit defendant to arbitrate disputes with plaintiff, defendant may enforce the arbitration clause, regardless of whether plaintiff separately agreed to the Platform Agreement, which he did. Accordingly, pursuant to the Promissory Note, plaintiff manifested agreement to arbitrate disputes like the Complaint with defendant and the motion to compel arbitration must be granted.

## III.

For the reasons set forth above, defendant's motion to compel arbitration and stay proceedings must be granted.

An appropriate order will issue separately.

---

agreement where it signed a subsequent agreement incorporating the prior agreement by reference); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (abrogated on other grounds) (using equitable estoppel theory to allow a non-signatory to compel arbitration); *Thomson-CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773, 779 (2d Cir. 1995) ("circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed").

[14] *See Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) ("the reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope"); *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 265 (4th Cir. 2000) (dispute growing out of contract with no arbitration clause, but which stated parties had "rights and remedies" under another contract with such clause, is arbitrable); *Angeles v. Norwegian Cruise Lines, Inc.*, No. 01-9441, 2002 WL 1997898, at *4 (S.D.N.Y. Aug. 29, 2002) ("Because Plaintiff's Contract incorporates by reference [a separate contract], the forum-selection clause is a term of the contract.")

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 5, 2020

/s/
T. S. Ellis, III
United States District Judge